# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Enerplus Resources (USA) Corporation, a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) ) | |
| Wilbur D. Wilkinson, an individual; Three Affiliated Tribes, Fort Berthold District Court; Reed Alan Soderstrom, agent for Wilbur D. Wilkinson; and Ervin J. Lee, an individual, | ) ) ) ) ) ) ) | Case No. 1:16-cv-103 |
| Defendants. | ) ) | |
| and | ) ) | |
| Ervin J. Lee, an individual, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| Reed Soderstrom, an individual; MHA Nation Supreme Court; Three Affiliated Tribes; and Fort Berthold Tribal District Court, | ) ) ) ) ) | |
| Third-Party Defendants. | ) ) | |
| and | ) ) | |
| Ervin J. Lee, an individual, | ) ) | |
| Cross-Claimant | ) ) | |
| vs. | ) ) ) | |
| Wilbur D. Wilkinson, an individual, | ) ) | |
| Cross-Defendant. | ) | |

Before the Court is Defendant Wilbur Wilkinson's motion for reconsideration filed on November 16, 2017. See Docket No. 93. Plaintiff Enerplus Resources (USA) Corporation ("Enerplus") filed a response in opposition to the motion on November 20, 2017. See Docket No. 96. Also before the Court are Enerplus' motion for attorneys fees and motion for prejudgment interest filed on November 21, 2017. See Docket Nos. 97 and 98. Wilkinson filed a response in opposition to the motions on December 4, 2017. See Docket Nos. 101 and 102. Enerplus filed reply briefs in support of its motions for attorneys fees and prejudgment interest on December 11, 2017. See Docket Nos. 103 and 104. For the reasons set forth below, Enerplus' motion for attorneys fees is granted. Enerplus' motion for prejudgment interest and Wilkinson's motion for reconsideration are denied.

I.  **BACKGROUND**

Enerplus is a Delaware corporation whose principal place of business is located in Denver, Colorado. Enerplus is primarily engaged in the oil and gas exploration business and is authorized to do business as a foreign corporation in the state of North Dakota. Wilbur Wilkinson is an individual residing in Garrison, North Dakota, and a citizen of the state of North Dakota. The Three Affiliated Tribes Fort Berthold District Court ("Tribal Court") is a Tribal Court sitting on the Fort Berthold Indian Reservation in North Dakota. Reed Soderstrom is an attorney at Pringle & Herigstad, P.C., in Minot, North Dakota, and a citizen of North Dakota. Ervin Lee is a former attorney and a citizen of the state of North Dakota.

In September 2008, Wilkinson filed a lawsuit against Peak North Dakota, LLC ("Peak North") and others in Tribal Court. Lawsuits involving Peak North and Wilkinson were filed in a number of other courts as well. On October 31, 2008, the Tribal Court dismissed the lawsuit

because it lacked jurisdiction as a result of the forum selection clauses in the agreements between Peak North and Wilkinson. See Docket No. 1-2. On or about October 4, 2010, Peak North and Wilkinson, among others, entered into a "Settlement Agreement, Full Mutual Release, Waiver of Claims and Covenant Not to Sue" (the "Settlement Agreement") which resolved all the lawsuits, whereby Peak North agreed to assign to Wilkinson a 0.5% of 8/8ths overriding royalty interest in certain oil and gas leases located in North Dakota. See Docket No. 1-3. Lee represented Wilkinson during the negotiation of the Settlement Agreement. Ten percent (10%) of Wilkinson's overriding royalty interest was assigned to Lee as part of the Settlement Agreement. In the Settlement Agreement, Peak North and Wilkinson agreed that "any disputes arising under this Agreement and/or the transactions contemplated herein shall be resolved in the United States District Court for the District of North Dakota Northwest Division and such court shall have exclusive jurisdiction hereunder and no party shall have the right to contest such jurisdiction or venue." See Docket No.1-3, ¶ 7.

Pursuant to the Settlement Agreement and by way of an Assignment of Overriding Royalty Interest dated October 4, 2010, ("ORRI Assignment"), Peak North assigned to Wilkinson a 0.45% of 8/8ths overriding royalty interest and Lee 0.05% of 8/8ths overriding royalty interest, proportionately reduced accordingly, in the oil and gas leases in North Dakota. See Docket No. 1-4. The ORRI Assignment provides that all disputes arising from the ORRI Assignment "shall be resolved in the State Courts of the State of North Dakota or an applicable Federal District Court sitting in North Dakota and such courts shall have exclusive jurisdiction hereunder and neither Assignor [n]or Assignee shall have the right to contest jurisdiction or venue." See Docket No. 1-4, ¶ 6.

In conjunction with the execution of the Settlement Agreement and the ORRI Assignment,

Wilkinson and Lee both executed "Division Orders" dated October 4, 2010. See Docket Nos. 1-5 and 1-6. Both Division Orders provide that all disputes arising from the Division Order "and/or the transactions contemplated herein shall be resolved in the State Courts of the State of North Dakota or an applicable Federal District Court sitting in North Dakota and such courts shall have exclusive jurisdiction hereunder and Interest Owner shall not have the right to contest jurisdiction or venue." See Docket Nos. 1-5 and 1-6, p. 3.

In December 2010, Peak North merged with Enerplus, with Enerplus being the surviving entity. See Docket Nos. 10-5 and 67-1. Around this same time, an attorney fee dispute arose between Wilkinson and Lee relating to the Settlement Agreement. On or about December 10, 2010, Wilkinson filed suit against Lee in Tribal Court, in a case styled Wilbur D. Wilkinson v. Ervin J. Lee, Civil No. CV-2010-0673. See Docket No. 24-17. In the Tribal Court action, Wilkinson alleged Lee breached the Settlement Agreement and demanded the return of $140,000. In February 2011, the Tribal Court ordered all future payments due from Peak North to Wilkinson and Lee be deposited into the trust account of Wilkinson's attorney, Reed Soderstrom (the "IOLTA Payment Order"). See Docket No. 1-6. The Tribal Court denied Lee's motion to dismiss for lack of jurisdiction, and Lee appealed. See Docket Nos. 24-27 and 24-28. On August 31, 2015, MHA Nation Supreme Court affirmed the Tribal Court's jurisdictional ruling. See Docket No. 24-31. The MHA Supreme Court reaffirmed its jurisdictional ruling on November 30, 2015. See Docket No. 24-34.

Between September 2014 and October 2015, when paying the overriding royalty interest amount due to Wilkinson and Lee, collectively, the Enerplus accounting department, through clerical error, authorized the total deposit of $2,991,425.25 into Soderstrom's IOLTA account. Enerplus was only required to deposit a total of $29,914.10. As a result, Enerplus overpaid

4

Wilkinson and Lee, collectively, by **$2,961,511.15** (the "Excess Money"). See Docket Nos. 1-5 and 1-7. After Enerplus discovered the overpayment, it contacted Wilkinson and Soderstrom in December 2015, and requested the money be returned. Wilkinson and Soderstrom refused to return the Excess Money.

On or about February 29, 2016, Wilkinson filed suit against Enerplus in Tribal Court in a case styled Wilbur D. Wilkinson v. Enerplus Resources Corporation, Civil No. CV-2016-0079 (the "Tribal Court Case"), alleging Enerplus has breached the Settlement Agreement by not fully paying Wilkinson as required by the Settlement Agreement. See Docket No. 1-8. Enerplus commenced the current action in federal court on May 4, 2016. See Docket No. 1.

On August 30, 2016, this Court entered a preliminary injunction requiring the Excess Money to be deposited with the Court and prohibiting Wilkinson from litigating any disputes arising from the Settlement Agreement, ORRI Assignment, and Division Orders in Tribal Court, and prohibiting the Tribal Court from exercising jurisdiction over Enerplus. See Docket No. 48. The Excess Money was deposited with the Court on October 11, 2016, and remains in the Court's registry account. Wilkinson and Soderstrom appealed the preliminary injunction but this Court refused to stay the case pending the appeal. See Docket Nos. 49 and 55. The Eighth Circuit Court of Appeals affirmed the Court's grant of a preliminary injunction on August 2, 2017. See Docket No. 86.

On February 23, 2017, the Court granted Enerplus' motion summary judgment as to the Excess Money/equitable restitution issue finding Enerplus was entitled to have the Excess Money returned to it. See Docket No. 75. Enerplus dismissed its claim for an accounting. See Docket Nos. 79 and 91. On November 2, 2017, the Court granted summary judgment in favor of Enerplus on all remaining issues and, among other things, entered a permanent injunction enjoining Wilkinson from prosecuting any lawsuits in Fort Berthold District Court or Tribal Court arising from or related to

the Settlement Agreement, the ORRI Assignment, and/or the Wilkinson and Lee Division orders and enjoining the Fort Berthold District Court from hearing the case Wilkinson had previously filed; ordered the **$2,961,511.15** held in the Court's registry account, plus interest be released to Enerplus; and awarded Enerplus attorneys fees in an amount to be determined but to include $36,933.77 related to Wilkinson's appeal of the Court's grant of a preliminary injunction. See Docket No. 91. On or about December 8, 2017, a check in the amount of $2,981,452.99, which represents the $2,961,511.15 in Excess Money plus $19,941.84 in interest, was mailed to Enerplus. Wilkinson now asks the Court to reconsider its order granting summary judgment. See Docket No. 93. Enerplus has filed a motion for attorneys fees as instructed by the Court. See Docket No. 98. Enerplus has also filed a motion for prejudgment interest. See Docket No. 97.

## II.  LEGAL DISCUSSION

### A.  RECONSIDERATION

Wilkinson asks the Court to reconsider its order dated November 2, 2017, granting summary judgment. Wilkinson argues in his motion that the merger of Peak North Dakota, LLC and Enerplus deprives Enerplus, as the surviving entity, of standing to enforce the Settlement Agreement, a contention the Court has repeatedly rejected. See Docket Nos. 48, p. 8 and 75, p. 8. The Eighth Circuit Court of Appeals also rejected the argument. See Docket No. 86-1, pp. 6-7. Repetition has not improved Wilkinson's argument, which the Court once again rejects.

In its November 2, 2017, order, the Court stated "Wilkinson's failure to return the Excess Money when requested by Enerplus was unconscionable and indefensible, and he has failed to raise any meritorious arguments in this case." See Docket No. 91, p. 10. Wilkinson again fails to raise any meritorious arguments and nothing in his motion to reconsider has persuaded the Court that its

6

grant of summary judgment was in any manner incorrect. The motion is denied.

B. **ATTORNEYS FEES**

In granting summary judgment, the Court determined that the terms of the Settlement Agreement and the Wilkinson Division Order entitled Enerplus to an award of reasonable attorneys fees, including $36,933.77 in attorneys fees related to Wilkinson's appeal to the Eighth Circuit of the Court's grant of a preliminary injunction. Enerplus has requested attorneys fees and costs in the total amount of $253,312.52, a sum which includes the previously awarded $36,933.77 related to the appeal. Enerplus requests $216,378.75 in costs and attorneys fees related to this case and the Tribal Court case. This sum includes $1,345.00 in costs, $211,990.52 in attorneys fees, and $3,043.23 in expenses.

Wilkinson contends the hourly rates charged by counsel for Enerplus are excessive and significantly higher than the prevailing rates in North Dakota. Wilkinson also contends that hours billed in relation to Enerplus' claim for equitable restitution of the Excess Money are not covered by the Settlement Agreement or the Wilkinson Division order. Wilkinson does not object to Enerplus' request for costs or expenses and the overall number of hours billed on the case. "A party's failure to object to a specific item of cost may be deemed a waiver of any objection to the claimed item." D.N.D. Civ. L.R. 54.1(A)(1). Accordingly, the only issue that remains is whether the amount of attorneys fees requested by Enerplus are reasonable.

It is well-established that determining the amount of reasonable attorneys fees is within the discretion of the trial court. City of Bismarck v. Thom, 261 N.W.2d 640, 646 (N.D. 1977); Hensley v. Eckerhart, 461 U.S. 424, 426 (1983); Troutman v. Pierce, Inc., 402 N.W.2d 920, 925 (N.D. 1987); Duchscherer v. W.W. Wallwork, Inc., 534 N.W.2d 13, 16 (N.D. 1995). The method employed by

the United States Supreme Court is known as the "lodestar" method. The initial starting point for a determination of reasonable attorney's fees is a calculation of the "lodestar figure" which is the product of the number of hours reasonably expended times a reasonable hourly rate. Burlington v. Dague, 505 U.S. 557, 559-60 (1992); Blanchard v. Bergeron, 489 U.S. 87, 94 (1989); Duchscherer, 534 N.W.2d at 17.

However, a calculation of the lodestar figure does not complete the analysis: "the presumptively reasonable amount of attorney's fees may be varied for other considerations that justify an upward or downward adjustment." Duchscherer, 534 N.W.2d at 17. In *Hensley*, the United States Supreme Court explained that a trial court may consider the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), to adjust the lodestar amount. Hensley, 461 U.S. at 429-30. "*Hensley* thus adopted a 'hybrid' approach for calculating reasonable attorney's fees, an approach that combines elements of the lodestar calculation with the *Johnson* factors." Duchscherer, 534 N.W.2d at 17. Similarly, the North Dakota Supreme Court has held "[t]he factors listed in N.D.R. Prof. Conduct 1.5(a) are intended to guide a district court in determining the reasonableness of an award of attorney fees." Heng v. Rotech Med. Corp., 720 N.W.2d 54, 64-65 (N.D. 2006). The factors listed in Rule 1.5(a) include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

With respect to the issue of attorneys fees, trial courts have been instructed to utilize their own knowledge relating to various aspects of the lodestar. "The trial judge should weigh the hours claimed against his knowledge, experience and expertise of the time required to complete similar activities." Gilbert v. City of Little Rock, Ark., 867 F.2d 1063, 1066 (8th Cir. 1989); Saxton v. Sec'y of the Dep't of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The trial court may bring to bear its knowledge and experience concerning the time demands of the particular case. Wojtkowski v. Cade, 725 F.2d 127, 130 (1st Cir. 1984). The trial court may also undertake various reductions of the claimed fees, based on, for example, limited success, an unreasonable hourly rate, excessive hours expended, or poor record keeping. See Farrar v. Hobby, 506 U.S. 103, 111-12 (1992); Schultz v. Amick, 955 F.Supp. 1087, 1116 (N.D. Iowa 1997).

As to the hourly rates charged by counsel for Enerplus, counsel already discounted their work in order to compensate for the higher hourly rates charged in Denver, Colorado, and Kansas City, Missouri, as opposed to North Dakota, and to account for any inefficiencies in their work. Counsel at Lathrop & Gage, LLP ("Lathrop"), and Fox Rothschild, LLP ("Fox"), applied 20% and 15% reductions, respectively, to their invoiced amounts, totaling reductions of $40,423.48. Enerplus therefore seeks to recover the discounted amount totaling $211,990.52. The Court previously approved of these discounted hourly rates when it awarded attorneys fees relating to the appeal. See Docket No. 91, pp. 10-11. The Court again finds the discounted hourly rates charged by counsel for Enerplus to be reasonable given their level of experience and skill. Moreover, it was certainly not unreasonable for Enerplus to rely on counsel with which it has longstanding relationships rather than retain counsel in North Dakota.

The Court finds Wilkinson's contention the hours billed in relation to Enerplus' claim for equitable restitution of the Excess Money are not covered by the Settlement Agreement or the

9

Wilkinson Division order unpersuasive. The Court has already determined that terms of the Settlement Agreement and the Wilkinson Division order support the award of attorneys fees in this case. See Docket No. 91, p. 10. The overpayment clearly grew out of the Settlement Agreement and Wilkinson Division order which established the royalty Wilkinson was due. A claim for equitable restitution was certainly appropriate and necessary given the conduct of Wilkinson.

Wilkinson initiated the lawsuit in Tribal Court even though the terms of both the Settlement Agreement and the Wilkinson Division order clearly provided for disputes to be settled in federal court or the state courts of North Dakota. Wilkinson then appealed the grant of a preliminary injunction in this case. It was Wilkinson who unreasonably refused to refund the Excess Money and compounded the litigation through frivolous arguments and a consistent refusal to acknowledge the obvious. In the broad exercise of the Court's discretion, the Court awards a total of $253,312.52 in attorneys fees and costs to Enerplus.

    **C.**     **PREJUDGMENT INTEREST**

Due to a clerical error, Enerplus mistakenly overpaid $2,961,511.15 ("Excess Money") to Wilkinson and Lee over the course of fourteen months between September 2014 and October 2015. When Enerplus discovered its mistake in December 2015, it asked the Defendants to return the Excess Money, but they stubbornly refused. On May 4, 2016, Enerplus commenced this action seeking, among other things, to recover the Excess Money.

On August 30, 2016, the Court ordered that the Excess Money be deposited with the Court. See Docket No. 48. The Defendants deposited the Excess Money with the Court on October 11, 2016. The Excess Money was held in an interest bearing account in the Court Registry Investment System ("CRIS").

On February 23, 2017, the Court granted Enerplus' first motion for summary judgment on its claim for equitable restitution, concluding that Enerplus is entitled under North Dakota law to have the Excess Money returned to it. See Docket No. 75. The Court found that the overpayment was the result of a simple mistake of fact, that being a clerical error in calculating the royalty payments. On November 2, 2017, the Court granted Enerplus' second motion for summary judgment and ordered the Clerk of Court to disburse the $2,961,511.15 held in the Court's registry account, plus all interest that has accrued, to counsel for Enerplus. See Docket No. 91.

Enerplus now contends North Dakota law entitles it to prejudgment interest in the amount of $460,582.84. In diversity cases such as this, the award of prejudgment interest is governed by state law. Macheca Transp. Co. v. Philadelphia Indem. Ins. Co., 737 F.3d 1188, 1196 (8th Cir. 2013). In support of its argument, Enerplus cites N.D.C.C. § 32-03-04, which provides as follows:

> Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in the person upon a particular day, also is entitled to recover interest thereon from that day, except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt.

N.D.C.C. § 32-03-04. Wilkinson contends Section 32-03-04 does not apply.

In North Dakota, the award of prejudgment interest in contract cases is governed by N.D.C.C. § 32-03-04 while the award of prejudgment interest in cases not arising from contract is governed by N.D.C.C. § 32-03-05. See Huber v. Farmers Union Service Ass'n of N.D., 787 N.W.2d 268, 276 (N.D. 2010) (noting prejudgment interest in contract cases is governed by N.D.C.C. § 32-03-04); Midland Diesel Service & Engine Co. v. Sivertson, 307 N.W.2d 555, 558 (N.D. 1981) (noting N.D.C.C. § 32-03-05 governs the award of prejudgment interest in cases of obligations not arising form contract). Section 32-03-05 provides as follows:

> In an action for the breach of an obligation not arising from contract and in every

11

case of oppression, fraud, or malice, interest may be given in the discretion of the court or jury.

N.D.C.C. § 32-03-05.

The award of prejudgment interest is mandatory in cases in which Section 32-03-04 applies and discretionary in cases where Section 32-03-05 applies. See Midland, 307 N.W.2d at 558. Prejudgment interest awarded pursuant to Section 32-03-04 is calculated at the statutory rate of six percent per annum. Horschkorn v. Severson, 319 N.W.2d 475, 480 (N.D. 1982) (applying statutory rate set out in N.D.C.C. § 47-14-05).

In this case, Enerplus brought a claim which it described as equitable restitution seeking return of the Excess Money which it mistakenly paid. See Docket No. 1, pp. 9-11. In support of its claim Enerplus cited three North Dakota cases which recognized such a cause of action: *Richland County v. State*, 180 N.W.2d 649, 655 (N.D. 1970); *Gust v. Wilson*, 60 N.W.2d 202, 207 (N.D. 1953); *Rohrville Farmers Union Elev. Co. v. Frison*, 42 N.W.2d 354, 356 (N.D. 1950). See Docket No. 1, ¶ 48. None of these cases describe such an action as one for equitable restitution. The *Rohrville* and *Gust* cases do not label the cause of action in any manner. In *Richland County* the action is described as one for unjust enrichment. 180 N.W.2d at 655.

No matter the label one gives such a cause of action, it is clearly one arising in equity. Such a remedy is "not based on contract" but rather rests on an "implied agreement" to return money "which in equity belongs to another" and which in "equity and good conscience" should be restored to its rightful owner. Gust, 60 N.W.2d at 207. In *Richland County* the North Dakota Supreme Court described the cause of action as follows:

> The doctrine that one party shall not be unjustly enriched at the expense of another has been recognized in this State. We have held that an action for money had and received will lie whenever one party has possession of money that in equity belongs to another and which such party, in good conscience, should restore.

12

> An action for money had and received will lie whenever one party has in his possession money which in equity belongs to another and ought to be delivered to such party. An action for money had and received is in the nature of an equitable remedy to compel a party unjustly enriched at the expense of another to disgorge that which it thus has received and to deliver it to the one entitled thereto.

180 N.W.2d at 655 (internal citations omitted) (emphasis added). "The doctrine of unjust enrichment serves as a basis for requiring restitution of benefits conferred in the absence of an express or implied in fact contract." Midland, 307 N.W.2d at 557. In *Midland*, the North Dakota Supreme Court affirmed the denial of prejudgment interest on a claim for unjust enrichment stating that "[r]ecovery on unjust enrichment is an equitable allowance expressly unrelated to any previous obligation" and thus the plaintiff "did not have a 'vested' right of recovery until judgment was rendered." Id. at 558.

The Court finds Enerplus' equitable restitution claim may just as easily be described as one for unjust enrichment. Thus, Section 32-03-05 rather than Section 32-03-04 applies because Enerplus' did not have a vested right to recovery until judgment was entered. Midland, 307 N.W.2d at 558.

Enerplus' citation of James River Nat. Bank of Jamestown v. Weber, 19 N.D. 702, 954 (N.D. 1910) for the proposition that right to return of money mistakenly paid arises immediately upon payment is unavailing. *James River* is an older case that is contradicted by the holding in *Midland* that the right to recovery on a claim for unjust enrichment does not vest until judgment is rendered. Midland, 307 N.W.2d at 558. *James River* is also contradicted by the acknowledgment in *Rohrville* that in some cases, money paid under a mistake of fact need not be repaid when the payee relies upon the payment and has changed his position to his detriment. Rohrville, 42 N.W.2d at 357. Enerplus's reliance on *PHI Financial Services, Inc. v. Johnston Law Office, P.C.*, 874 N.W.2d 910 (N.D. 2016) is also misplaced as that case did not involve a claim for unjust enrichment or mistaken

13

payment but rather claims for conversion and fraudulent transfer in a debtor/creditor context relying upon the Uniform Fraudulent Transfer Act, N.D.C.C. ch. 13-02.1.

In the broad exercise of the Court's discretion, the Court declines to award prejudgment interest in this case. See N.D.C.C. § 32-03-05 (leaving prejudgment interest to the discretion of the court); Grinnell Mut. Reinsurance Co. v. Ctr. Mut. Ins. Co., 658 N.W.2d 363, 382 (N.D. 2003). (noting Section 32-03-05 gives a court the discretion to award prejudgment interest for the breach of an obligation not arising from contract). The initial clerical error which led to the overpayments belongs to Enerplus. Enerplus made the overpayments between September 2014 and October 2015 but did not discover the error until December 2015. This action was commenced in May 2016, and the Excess Money deposited with the Court in October 2016. The Court has awarded Enerplus all interest ($19,941.84) which accrued while the Excess Money was being held by the Court. Wilkinson did not have any beneficial use of the Excess Money as it was held in attorney Soderstrom's IOLTA account at all times prior to its deposit with the Court. All of the Excess Money has been returned to Enerplus. In addition, the Court has awarded Enerplus all of its requested attorneys fees. Thus, Enerplus has essentially been made whole. See Smith v. World Ins. Co., 38 F.3d 1456, 1467 (8th Cir. 1994) (noting the purpose of an award of prejudgment interest is to make the plaintiff whole). To the extent Enerplus feels it has not been made whole, it should noted the initial mistake was its own and that mistake went unnoticed for approximately fifteen months. The motion for prejudgment interest is denied.

### III. CONCLUSION

For the reasons set forth above, Wilkinson's motion for reconsideration (Docket No. 93) is **DENIED**. Enerplus' motion for prejudgment interest (Docket No. 97) is **DENIED**. Enerplus'

motion for attorneys fees (Docket No. 98) is **GRANTED**.  The Court, in the broad exercise of its discretion under Rule 54(d), awards costs and attorneys fees to Enerplus, and against Wilkinson, in the amount of $253,312.52.

**IT IS SO ORDERED**.

Dated this 12th day of December, 2017.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court